CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for Rice
JUN 11 2009
JOHN F. CORCORAN, CLERK
BY: H McDonaod
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| VINCE GILMER, | ) | Civil Action No. 7:08-cv-00516 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DR. ASHAN, et al., | ) | By: Hon. Jackson L. Kiser |
| Defendants. | ) | Senior United States District Judge |

Plaintiff Vince Gilmer, a Virginia inmate proceeding pro se, filed a motion for a temporary restraining order ("TRO") to protect his civil rights, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Gilmer names as defendants Gene Johnson, Director of the Virginia Department of Corrections ("VDOC"); Dr. Ashan; Dr. Thompson; and Warden Watson. Gilmer alleges that the defendants violate his Eighth Amendment rights to be free from cruel and unusual punishment. The matter is presently before me for screening. After reviewing Gilmer's submissions, I deny his motion for a temporary restraining order and dismiss the action for failing to state a claim upon which relief may be granted.

I.

A.

Gilmer alleges the following facts relevant to the defendants. Gilmer experiences "SSRI withdrawal syndrome"[1] ("SSRIWS"), and "95% of psychiatrists don't know about" it. (TRO Mot. 1.) SSRIWS feels like an electric cattle prod hitting the brain. (Id. 6.) SSRIWS makes Gilmer confused, unreasonable, angry, and violent. (Id. 7.) Gilmer also has severe reactive hypoglycemia, and his blood sugars drop every three hours. (Id. 11.) The hypoglycemia makes

---

[1] SSRI stands for "selective serotonin reuptake inhibitors" and are a class of chemical compounds used in antidepressant medications.

him become sweaty and confused. (Id.) Gilmer alleges that he is fed only 800 to 1000 calories a day, far short of the 2500 calories he needs for his brain to work. (Id.)

Gilmer visited defendant Dr. Ashan when he arrived at the Wallens Ridge State Prison ("WARSP"). (TRO Mot. 2.) Gilmer told Ashan that he cannot miss a single dose of his medicine to keep SSRIWS from occurring or Ashan must immediately restart the medications when Gilmer becomes psychotic. (Id. 4.) Ashan agreed to write a special order to the prison nurses, instructing them to make sure Gilmer gets his medicine because he experiences SSRIWS if he misses a dose. (Id. 3.) Gilmer gave Ashan an article from the American Society of Consulting Pharmacists about SSRIWS, but Ashan concluded that the article did not establish a connection between SSRIWS and violent, homicidal thoughts. (Id. 4-5.) Ashan did not know about SSRIWS, was "too busy to look it up[,]" and did not actually write the order to the nurses. (Id.)

On August 25, 2007, a nurse refused to bring Gilmer his medicine, he experienced SSRIWS, and he nearly killed his cell mate. (Id. 3.) The nurses refused to bring him his medicine two or three times per month, and they lied by telling superiors that Gilmer received his medicine. (TRO Mot. 6, 8, 9.) The nurses ran out of his medicine on August 26, 2008, and they said that the medicine will not be available for two weeks. (Id. 6.)

Gilmer filed letters in October 2008 that alleged the following facts relevant to a defendant. (Additional Evidence (docket #3-4).) A nurse said Gilmer's Prilosec medication is out of stock, but Gilmer's mother called defendant Watson, warden of the WARSP, and "it turns out [that] [they] w[ere] not out of Prilosec." (Additional Evidence (docket #3) 3.)

2

Case 7:08-cv-00516-JLK-mfu   Document 12   Filed 06/11/09   Page 2 of 10   Pageid#: 130

B.

Gilmer also alleges that Dr. Ofogh, a doctor at the Southwest Virginia Regional Jail ("SWRJ") in 2005, also did not believe him about SSRIWS. (TRO Mot. 9.) Gilmer passed out from hypoglycemia during the fist night he stayed at the SWRJ in 2005. (Id. 12.) Ofogh did not order the correct diet to control Gilmer's blood sugar because Gilmer alleges that Ofogh and Dr. Thompson were deliberately indifferent to his reactive hypoglycemia. Ofogh also terminated Gilmer's medications which induced SSRIWS. Gilmer became aggressive, and six guards subdued Gilmer by beating him for twenty minutes, pepper-spraying his urethra, and breaking his teeth. (Id. 10.)

C.

Gilmer filed a motion for a temporary restraining order, asking me to order the VDOC Director to transfer him to the Marion Medical Facility ("Marion") for medical treatment of SSRIWS, reactive hypoglycemia, and post-traumatic stress disorder. (Id. 14.) However, Gilmer states that the psychiatrist at Marion will not likely know about SSRIWS but he will teach that doctor because he is a perfect example of SSRIWS. Gilmer also asks me to order defendant Johnson to allow Gilmer to receive mail from the public that is marked "confidential" and will only be opened in his presence. (TRO Mot. 16.) Gilmer also requests 80 milligrams of Celexia and 20 milligrams of Prilosec each day and to remain in cell C620 with Stewart Duke until Gilmer leaves the WARSP. (Id. 17.)

The court conditionally filed this action and advised Gilmer that he failed to state a claim upon which § 1983 relief may be granted. The court also described the elements for issuing a TRO. Gilmer did not submit within the twenty-day period allowed by the conditional filing order

3

a complaint nor additional facts relevant to his TRO. Gilmer submitted a letter in March, stating that he had "every intention of sending in a complete complaint in Jan[uary] [20]09, but my blood sugars went way too low for several weeks." (Resp. (docket #7) 2.) In the absence of a complaint, I liberally construe Gilmer's motion for a TRO as a complaint requesting injunctive relief for violations of his Eighth Amendment protection against inadequate medical care and as a motion for a TRO. The time to respond to the conditional filing order has expired, and the matter is now ripe for screening.[2]

## II.

### A.

The issuance or denial of a preliminary injunction or a temporary restraining order "is committed to the sound discretion of the trial court." Quince Orchard Valley Citizens Ass'n, Inc v. Hodel, 872 F.2d 75, 78 (4th Cir. 1989). The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

I may issue a temporary restraining order without notice to the adverse party only if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the complainant before the adverse party can be heard in

---

[2] In his March 10, 2009, letter, Gilmer alleged that this action was filed "by the pro se law clerk[;] it was not meant to be filed as a claim." Pro se law clerks do not file inmate documents as that is the responsibility of the Clerk of the Court. Gilmer also requested assistance from a pro se law clerk to make a complaint in this action. However, pro se law clerks are not allowed to provide legal assistance to litigants.

On the date the court was to enter this opinion, the court received another letter from Gilmer claiming he was going to mail in a request for an evidentiary hearing. The court waited for the materials but did not receive any additional documents as of the date of this opinion.

4

opposition. Fed. R. Civ. P. 65(b)(1)(A). The complainant's attorney must certify in writing any effort made to give notice to the other party and the reasons why notice should not be required. Id. at 65(b)(1)(B). I will issue an injunction only if the plaintiff makes a strong showing that irreparable harm will occur if the injunction is denied. Scotts Co. v. United Indus. Corp., 315 F.3d 264, 271 (4th Cir. 2002) (citing Safety-Kleen, Inc. (Pinewood) v. Wyche, 274 F.3d 846, 859 (4th Cir. 2001)). I then apply the balance of hardship test by examining the following three factors: (1) the likelihood of harm to the defendant with an injunction; (2) the plaintiff's likelihood of success on the merits; and (3) the public interest. Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 194 (4th Cir. 1977); see Commonwealth of Virginia v. Kelly, 29 F.3d 145, 147 (4th Cir. 1994) (applying Blackwelder test for a temporary restraining order).

Gilmer clearly requests that I alter the status quo by ordering the VDOC to provide Gilmer certain medications every day for the rest of his sentence and ordering the WARSP to keep Gilmer in a specific cell with a specific cell mate before transferring him to a medical facility to receive a specific course of treatment that Gilmer acknowledges will not likely be recognized as medically necessary. Although the court advised Gilmer that he needs to strongly show success on the merits of his claims, Gilmer failed to appropriately respond to the conditional filing order.

Gilmer fails to strongly show that he will suffer irreparable harm if I deny his request for the TRO. Gilmer acknowledges that he is under the care of medical personnel at his current facility. While Gilmer alleges that the nurses occasionally do not give him his medicine, he fails to establish how such conduct constitutes irreparable harm when any harm is immediately negated by resuming regular treatment.

5

If I were to issue Gilmer's requested relief, the order would dictate new operating procedures to prison officials, an endeavor federal courts are ill-equipped to manage. See Procunier v. Martinez, 416 U.S. 396, 405 (1974) (dictum). While the injunction would impose a burden on the defendants, the injunction would also burden people without any interest in the litigation, including prison administrators, medical staff, and other inmates.

Gilmer fails to persuade me that he is likely to succeed on the merits of his claims. By Gilmer's own admission, 95% of fellow medical doctors do not know SSRIWS exists. Gilmer discussed SSRIWS with Ashan who prescribed a treatment and disagreed with Gilmer's opinion about the clinical relationship of his violent acts to SSRIWS. Therefore, Gilmer complaint is merely a disagreement as to the appropriateness of the treatment or diagnosis of a relatively unknown illness, and allegations of negligent diagnosis or malpractice are not actionable under § 1983. See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Furthermore, Gilmer fails to link the allegations that the nurses forgot to give him his medicine to any deliberate indifference by the defendants because he alleges that the nurses lied to their supervisors or whether any defendant was the nurses' supervisor. See Vinnedge v. Gibbs, 550 F.2d 926, 929 (4th Cir. 1977) (holding respondeat superior inapplicable to § 1983 actions). Moreover, Gilmer's allegations against Dr. Ofogh clearly fail to state a claim upon which relief may be granted because any such claim falls beyond the statute of limitations.[3]

Finally, the public has an interest in reducing administrative and medical costs incurred for the treatment of a convict who has not yet proved that he is entitled to any redress.

---

[3] Gilmer brought these claims against Dr. Ofogh in a separate civil action that I dismissed for failing to state a claim upon which relief may be granted because the action was untimely. See Gilmer v. Dr. Ofogh, et al., Civil Action No. 7:08-cv-00618 (W.D. Va.).

Accordingly, I find that Gilmer fails to make the requisite showing to issue a TRO, and I deny his request.

B.

In the absence of a formal complaint, I proceed to liberally construe and examine the merits of all of Gilmer's submissions in this case to determine whether he states a claim upon which relief may be granted. I am required to dismiss any action or claim filed by an inmate if I determine that the action or claim is frivolous or fails to state a claim on which relief can be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e©. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). A complaint needs "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level. . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A plaintiff's grounds for relief "requires more than labels and conclusions. . . ." Id. Although I liberally construe pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), I do not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985); see also Gordon, 574 F.2d at 1151 (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff).

To state an Eighth Amendment claim for ineffective medical assistance, Gilmer must

7

establish that the defendants acted with deliberate indifference to his serious medical needs. Estelle, 429 U.S. at 104. Deliberate indifference occurs when a public official must have been personally aware of facts indicating a substantial risk of serious harm and the official actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). The prisoner must demonstrate that a defendant's action was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

However, claims of medical malpractice and negligent diagnosis are not cognizable in a § 1983 proceeding. Estelle, 429 U.S. 104-05; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); see Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (noting that treating doctors must actually draw the inference that an inmate's symptoms signify the presence of a particular condition and that a failure to draw such an inference may present a claim for negligence, but not a claim under the Eighth Amendment). A prisoner's disagreement with medical personnel over the course of his treatment does not state a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam).

A serious medical condition exists when it has been diagnosed by a physician as mandating treatment or the condition is so obvious that even a lay person would recognize the need for medical care. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). A serious medical need also occurs when a condition places an inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or when lack of treatment perpetuates severe pain. Sosebee, 797 F.2d at 181-83.

To bring a constitutional claim against non-medical prison personnel, a plaintiff must

8

Case 7:08-cv-00516-JLK-mfu   Document 12   Filed 06/11/09   Page 8 of 10   Pageid#: 136

show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier, 896 F.2d at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. Id. Furthermore, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007).

Gilmer does not allege any direct involvement by defendants Thompson, Johnson, or Watson in any alleged constitutionally insufficient medical treatment, and, thus, any claim against these defendants fails on that basis. Liability under § 1983 cannot be imposed upon a defendant unless the defendant is shown to have "participated directly" in the alleged violation of the plaintiff's constitutional rights. See Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1133, 1142 (4th Cir. 1982) (holding no basis under 42 U.S.C. § 1983 for vicarious liability) (abrogated on other grounds). Liability under § 1983 cannot be based on the supervisory position of a defendant with respect to the alleged conduct of others. See Ross v. Reed, 719 F.2d 689, 698 (4th Cir. 1983) (holding respondeat superior liability has no place in § 1983 jurisprudence). Gilmer does not allege a basis whatsoever for any claim that these defendants were deliberately indifferent to any serious medical need.

Gilmer also fails to state a constitutional claim versus Dr. Ashan because Gilmer's complaint is merely a disagreement as to the appropriateness of the treatment or diagnosis of a relatively unknown illness, as discussed supra. By his own admission, Gilmer repeatedly informed Ashan about SSRIWS, and Gilmer receives medications to prevent his SSRIWS from occurring. Ashan prescribed a treatment but disagreed with Gilmer's opinion about the clinical relationship of his violent acts to SSRIWS after discussing the topic with Gilmer. See Estelle, 429 U.S. at

9

105-06 (holding that allegations of negligent diagnosis or malpractice are not actionable under § 1983.)

Gilmer fails to establish who were the nurses' supervisors, and Gilmer fails to link the allegations that the nurses forgot to give him his medicine to any deliberate indifference by the defendants because he alleges that the nurses lied to their supervisors. See Vinnedge v. Gibbs, 550 F.2d 926, 929 (4th Cir. 1977) (holding respondeat superior inapplicable to § 1983 actions). Without any causal link and between the nurses and the defendants, Gilmer cannot hold a defendant liable for the acts of the nurses. Accordingly, Gilmer fails to state a claim upon which relief may be granted.

III.

For the foregoing reasons, I deny Gilmer's motion for a temporary restraining order and I dismiss the action for failing to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[4]

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff.

ENTER: This 11th day of June, 2009.

Senior United States District Judge

---

[4] Federal law provides that a prisoner may not bring a civil action without complete prepayment of the appropriate filing fee if the prisoner has brought, on three or more occasions, an action or appeal in a federal court that was dismissed as frivolous, as malicious, or for failure to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g). Plaintiff is advised that this dismissal constitutes his third "strike" under § 1915(g). Therefore, Gilmer's future civil complaints must be accompanied with complete payment of the applicable filing fee or otherwise comply with § 1915(g).

10